Good morning, everyone. We have four matters on today's argument calendar, including two United States v. Garner, 15-3454 and 21-472, as well as Madison v. C. Bush e. Cali, 20-1120, that are on submission, that are deemed submitted, and as to which will reserve decision. So I understand that all counsel for the matters to be argued today are present. We'll, therefore, dispense with the calling of the calendar, and we'll proceed right away with Nitkewicz v. Lincoln Life & Annuity Company, 21-1830. Mr. Ard. Good morning, Your Honors. Seth Ard, Sussman Godfrey for the appellant. New York law requires life insurance companies to refund, quote, any premiums actually paid for, quote, any period after the insured is already dead. That plain statutory text applies here. Can I interrupt you just for a second? Yes, Your Honor. It's not obvious to me why we have jurisdiction here. So I don't think it would be hard to clear that hurdle, but it wasn't obvious to me that we've got diversity and that we've got $5 million of potential damages. Your Honor, there is more than $5 million in potential damages. For plaintiff's policy alone, it's about $25,000, and there's thousands of these policies that have been issued. Is that in the record someplace? Well, maybe not, Your Honor, but the class definitions would include, some of them would include all life insurance policies issued by Lincoln Life Annuity Company, and there are potentially, you know, I think that- Well, you know that, and you're probably right, but how do we know that? Well, I think there are- It was never raised below. It was never raised by any court. I guess the courts have an independent obligation to do this, and I don't want to take up too much of your time on this, but it just says I looked at this. I didn't see anything below or here that made that clear, but maybe I missed something. Yes, Your Honor. I will think of anything else I can say about it in rebuttal, but I think that the court can take judicial notice that Lincoln Life Annuity Company, in other cases, has issued hundreds of these policies. I can't remember if that's alleged or not complained. I guess maybe it's not, but we allege- Can you provide us with a brief letter at the end of today on this jurisdictional issue? Yes, Your Honor. With respect to the amount of controversy and diversity? Yes, Your Honor. Now, the amount of controversy is a very important thing because, you know, it isn't obvious. Yes, Your Honor. Plaintiff's policy specified an annual- So by 5 p.m. today. Yes, Your Honor. Thank you. Plaintiff's policy specified an annual plan premium of $53,877.72. Plaintiff paid that exact annual premium every year, when due, including on May 7, 2018. But look, no one doubts that this is a premium, but the problem is, is any of this actually paid? That is, this is a different kind of a policy from the ones that were thought of at the time. This is money that is put in, and from that money, the actual payment are paid. But why is this the thing that the original law was about? Well, Your Honor, if you look at the prior subsection of the statute, 3203A1, it refers and covers all universal life policies. So it does cover this specific type of policy. If you look at that prior subsection, it in fact says, it refers to the fact that in these universal life policies, the net cash surrender value can be insufficient to cover the monthly charge in going to grace. But I guess the question is, when is this paid? In other words, the plan premium is turned over. I mean, it's deposited, but the policyholder has the ability to withdraw on it, right? Yes, Your Honor. It's paid if the policyholder has the ability to take it back. Well, two things, Your Honor. The policyholder does have the right to take out some money from the account subject to high fees. You know, just like an IRA account, you're paying for retirement savings, you can withdraw early subject to high fees. Before he died, if he had wanted to, he could have pulled out of this account everything but what he had paid before, couldn't he? Well, subject to high fees. He wouldn't have been able to take out all that. Well, subject to fees, but he would have been able to do that, which is not the case in the situations in which the law of New York clearly focused on. That is, if you pay a premium for the whole year, you can't two months later say, I want to pull back the premium for the end of the year. But here he could have. And, Your Honor, if he had done so, it may have been a very different case. But he didn't. If he pays the premium for it. But the question is, if this is money that is essentially in a bank account to pay the premium for month to month to month, and you can pull it out ahead of time, then the question is, what about the money that he left there and he didn't? And at that point, he didn't buy option two, which would have let him pull it back, but bought option one, which would not. Well, we're not seeking the full amount of option two. We're only seeking the amount of clamping. No, I understand. I'm just asking about what this fund to which he paid was, whether that was a premium actually paid, or if it was just a bank account from which month to month premiums would be paid. It's a premium actually paid, Your Honor. It's no different than, say, a cable bill that you pay once every year, and you have the right to cancel the cable subscription eight months in and get the remainder of your money back. If you do that, maybe you haven't paid for the year. But if you don't, like is the case here, you have paid for the year. But on a cable bill, I can't use my cable bill as collateral, and I can't borrow on it. I can't take it back at any point. Once I've written the check, it's there, right? And it's already paid. That's correct, Your Honor. But the planned premium in this case was designed to ensure coverage for a year guaranteed under the rider. If he paid this premium, this exact amount, it's not a random number. It's $53,877.72. It was calculated so that if he pays that exact amount once per year. Look, there is no doubt that the figure that they came up with was the same as what would have been a year's premium. But the question is, was that the figure that he needed to do, or could he have said, I'll put in less, or I'll put in more, or whatever? If you're telling me the insurance company may be fooling people into thinking this is something, that may be a different issue. But the question is, what is this thing? Well, Your Honor, it's a fact question as to whether he needed to pay more or pay less. What we allege and what we offered to allege in the amended pleading was that this was exactly the amount that's needed. Are there any New York cases, New York Court of Appeals, but even appellate divisions that tell us what this is? Well, Your Honor, the only thing that's in the record, the answer is no. The only thing- So, and if the answer is no, then why shouldn't we certify the issue of the New York Court of Appeals? Well, you could, Your Honor, but we don't think the statute is unclear on this. Well, I know you don't. Sorry. But neither does the dispute. Neither side thinks that we should certify, but that doesn't mean- So you agree that no New York court has endorsed your interpretation of the section? No New York court has rejected it or endorsed it. The only thing in the record is that another- That's very good. Sorry, go ahead. No, you go ahead. As I said, the only thing in the record is that another New York life insurance company, insuring a universal life policy for the same insured, refunded without dispute the balance of the planned premium for that year. Okay, so why shouldn't we give the New York Court of Appeals a chance to weigh in on what the statute means by actually paid and for any period? Your Honor, I don't- Is there a problem with that? I think it's your discretion to do so, of course. Okay. But I don't think there's any need to because the statute, we think, is clear. And I think, again, going back to my original point, it's critical- But if we disagree with you about the clarity of the statute and those two terms in particular- Yes. Then you don't see a reason not to certify. No, it's your discretion to do so, Your Honor. And it's critical, it's critical that the prior section, section 1 of the same statute, refers to this exact kind of policy. It refers to a universal life policy where you have flexible premiums and where you have a cash-to-render value you're building up, and where that cash-to-render value can be insufficient to cover the monthly charges. I'm asking you almost an impossible question, but why is it that the New York courts have not interpreted this particular section? Why would it be? Well, Your Honor- It's not even on the books. A few things. First, again, the record is another New York life insurance company paid this. So maybe there hasn't been a dispute because it's been paid, and it's been paid by other companies. That's in the record. That doesn't answer the question of why there's been no policy. What actually puzzles me is this is a New York life insurance, and there is an insurance agency. And the insurance agency can issue regulations clarifying. And what puzzles me is that we don't have a regulation that tells us. I mean, you know, if we had a regulation that told us it's this way or the other way, then we might very well not need to ask the New York Court of Appeals, because in any ambiguity, you know, maybe you follow the regulation. But why hasn't the regulation said something? Yes, Your Honor. And let me just make one point about the prior subsections. I think it's dispositive. Not only does the prior subsection talk about a situation where you have flexible premiums and a situation where you have cash surrender value that's insufficient to cover the monthly deduction. Those are the only two facts the district court focused on dismissing this complaint. It also says that in that scenario, for those kind of policies, you can pay sufficient premium to keep the policy enforced for three months. If you can pay sufficient premium to keep the policy enforced for three months, you can pay sufficient premium to keep the policy enforced for six months or for a year. The next section of the same statute says that if you die during a period for which a premium has been paid, a refund of any premium actually paid for any period beyond the end of the policy month must be refunded. It has two exemptions, not for flexible life policies. And so their position is essentially that if you have a premium that can keep a policy enforced for three months, that's not a premium payment that's paid for a period. But when they wrote that statute, with those two exemptions, this kind of policy did not exist, did it? I don't think that's right, Your Honor. That's not in the record. What is in the record is the prior subsection is referring to these kinds of sections, these kinds of policies. So of course it was written after these policies were invented. It refers to them. Am I right that there was guidance from the, or is guidance from the New York Department of Financial Services? I would, yes and no, Your Honor. What we have from the New York Department of Financial Services is a- Are you starting with the yes part of that or the no part of that answer? Well, I was going to start with, I guess, the both part. Okay. Which is that where we have the New York Department of Financial Services, a product outline that is solely designed to be for purposes of life insurance companies when they're setting up policies. And it's supposed to be generic. It doesn't mention planned premiums, the section they're talking about. It doesn't mention guaranteed riders, where you're paying a premium that guarantees you coverage for a year. Which essentially is functioning exactly like a term policy. But it is suggestive, what they had. It isn't a direct statement about it. Right, Your Honor. But actually, first of all, what they say is unclear. What they say is if certain conditions are met, then you have to pay the premium. It does not say if those conditions are not met, you don't have to pay the premium. And it doesn't say that because it's not addressing planned premiums. It's not addressing guaranteed riders. So- But more important, it assumes and it says that this statute can apply to a universal life policy. Which is exactly what the district court and the defendant are denying here. The word that is unclear in that guidance is applied. It says, you know, if the premium has been applied for a certain period of time. That's unclear. But under the defendant's interpretation, it would be meaningless. Because they say the only thing that can be applied is the monthly deduction. But the statute requires a refund for a premium paid after the month in which the insured has died. So the product guideline, if anything, helps us. Because one, it makes clear that it applies in a universal life policy. And second, their reading of the guidance makes it nonsensical. Okay. Go ahead. Can I ask one question? Of course, Ron. If we were to adopt your view of the statute, wouldn't that be a windfall to everybody who's selected option one? They get all the benefits of option two. Plus the benefits of being able to withdraw funds, use it as collateral, earn interest on what's there. It seems to me that you're getting more than you bargained for. Is that wrong? I believe so, Your Honor, because you're getting a lot less than what you get for an option two. In option two, you would get the entire policy account back. We're only saying you get the planned premium that you paid for that year. So that's point one. It's a much lesser amount. Point two, of course, is that New York law is the provision of statute overrides anything in the policy. No, but there are other benefits that come with option one, right? You have the flexibility of doing these other things and earning interest, right? You earn interest, but you pay a significant amount of charges that outweigh the interest. It's a fact question, but the charges are much greater. Every year, even if you pay this planned premium, your funds are going to go down because the charges are much higher than the interest. But, yeah, there is a policy account that gains interest. That's true. But the premiums and the policy says this repeatedly. So option two guarantees you the same as what you're saying the statute guarantees you for option one, right? You get just about everything that's left. Oh, no, no, no. There is a difference. It's a small difference. No, it could be a very big difference. It depends what's in your policy account. You could have $200,000 in your policy account at the beginning of the year. You pay your planned premium for $40,000. But if you put $200,000 in your policy account, if you can do that, then isn't that evidence that the policy account isn't premiums actually paid? Well- I mean the very fact of option two suggests that this account is doing more than simply paying the premiums. Because otherwise, you'd never have more in it than enough to pay. And if that were so, then what Judge Sullivan's question would be is correct. Why on earth would anybody ever pick option two unless there was more money in it? And if there was more money in it, doesn't that undercut your argument? Well, Your Honor, I think the point you made is exactly the point that I was trying to make, which is that if you have $200,000 in the policy account before the year begins, and you pay $40,000 planned premium, and you die five months later, six months later- I don't understand that. We're only asking for the $20,000, not the $200,000. If the concern is that your planned premium is more than is required to keep the policy in force for that year, that's a damages question. Defendant could argue that any excess premium you pay beyond what's required to keep the policy in force for that year should not be refunded because it's not paying for coverage. That's a damages question that could be answered later in the case. But the premium itself is a fact question. If, in fact, as happened here for this plaintiff, the planned premium is exactly what is required to pay for one year of guaranteed coverage, it's functioning no different than a term policy in that respect. And the policy doesn't make an exception for situations where you might be able to withdraw some of the fund. Again, my key example, there's a lot of differences. But the bare possibility that you could take out some money doesn't mean it's not paid for a year. If you did take it out, then it's different. We've kept you well past your time. Thank you, Your Honor. I reserve some time for rebuttal. Thank you, Your Honor. We'll hear from Mr. LaSalle. Good morning, Your Honors. Good morning. Mr. LaSalle, you are free to, but you do not have to, take off your mask if you want to. Thank you, Your Honor. Good morning. May it please the Court. John LaSalle for Lincoln Life and Annuity Company of New York. Before you get deep into what's the meat of this thing, can you just also address very quickly the jurisdictional question? I agree with Mr. Ard that it was not briefed below, and I am not certain that there are allegations in the complaint that describe the manner of the scope of the refund that would be demanded under the complaint's allegations. I would like to start with a question that Judge Sullivan asked Nickowitz, which is, isn't it true that if your application of the statute is appropriate, this is a windfall? And the answer to that question is yes. The statute, the policy gives an option, death benefit option one or death benefit option two. Death benefit option two is the more expensive of the two options. Let me just cut to something. I'll be quite frank. I think the reading that you propose is the one that makes most sense to me. On the other hand, there is no case that the New York courts have dealt with this, and another insurance company has paid. So why on earth in a situation like this shouldn't we certify giving the New York Court of Appeals a chance to speak to this and tell us what it is? And we have sometimes certified saying how we'd come out if they don't want to take it. And we could do that or not do that. But why shouldn't we in a case like this? We're then the jurisdiction of whether New York can get it or not or hear it, isn't that? Why on earth shouldn't we do that? You certainly have discretion, Your Honor, but I believe that the most compelling, the clear reading of the statute that the appellee has put forward here is the right one and that judicial economies I started out saying, I assume I agree with you. But still, you get another insurance company paying. Why won't you, well, I don't know if that was a question, and I apologize for interrupting. But why won't the insurance companies in New York State want clarity? And maybe the clarity comes from the guidance, that's a separate issue. But from the New York Court of Appeals, because that's a direct, that's the last word. The answer to your question is that I believe the guidance is clear that the New York DFS is providing to life insurance companies. Mr. Ard talked about how there was one other life insurance company that they can allege has taken a contrary position. I think it's important to understand the allegations that are contained in Paragraph 7 of the complaint, which explained that that policy was a $180,000 life insurance policy, where the refund was approximately $2,000. And I think it's hard to ascribe motive to what a third party would do looking at a different policy, not the policy before this court, and applying that same statute. I think that there are a number of explanations that could be made. Is this policy in the record? It is not in the record, your honor. Why hasn't the insurance agency, which came out with this thing, which is suggestive but isn't clear, come out with a clear regulation? And why haven't you asked them to come out with a clear regulation that said this is the way we read it? Because of course, this is a case where you have an agency, and maybe if the agency had spoken clearly, we wouldn't need to bother to certify. So I do not know why the agency has not put out regulation. But I do know that the statutory structure is such that the statute says this provision shall apply in substance unless the superintendent deems there to be alternative language that's more favorable to policy holders. So I do think that the deference that is appropriate to give the agency- I have a technical question that you may not be able to answer. Suppose this case were before the New York Court of Appeals or New York Court. Do those courts have the capacity to ask the agency to speak to it? I am not certain I know the answer to your question, Your Honor. However, I am aware of other instances where the New York DFS has put in amicus submissions. Yeah, of course they can do amicus submissions. So they have a view that is ultimately heard. I think that their view in this case is very clear given the product outlined. Well, the opposing counsel says their view cuts the other way. I don't know, but... I understand that, Your Honor. But, you know, at the joint appendix, page 46, there's a chart that outlines the language that the DFS uses when it explains the application to universal life insurance policies. And on the other side of that chart, the language that is used when applying to policies that do not have a cash value. We think that the combination, the comparison of that language makes clear that the only thing that is paying for any amount of insurance coverage is the monthly deduction. My adversary made a point looking at other portions of this statute. And that was one thing that Judge Cronin below also focused on. Because if you look at the front half of Section 3203A2, it talks about instances where the insurance company, rather than refunding a payment, can deduct a payment from the cash value. And if you apply the appellee... Sorry. If you apply Nitkowitz's theory to that first half, you get a situation where the optional planned premiums become a mandatory payment that the insurance company has the ability to demand, which is inconsistent with the policy language. If you look at what has happened since this statute was passed, I think you could cut what happened either way. That is, the legislature comes in and makes some changes which apply specifically to your kind of policy but don't do anything here. And so you could say, well, they made changes where they wanted to but didn't make changes with respect to this and didn't. On the other hand, that does leave a statute that has two exceptions, which are not yours, while as to other things they made changes. So I suppose you could argue they now know that your type of policy exists and they didn't make anything about it, so only those two exceptions. Isn't that a perhaps overly literalist, I'm not a literalist, but argument against you? So as to the two exceptions that apply on the face of the policy, on the face of the statute, I agree with you, those do not apply to the type of life insurance policy that Mr. Nitkowitz owns. However, there is a reading of the statute that would apply to universal life insurance policies. For example, and I'll be clear with your honors, I don't know if this product exists, but if there was a product that deducted the monthly deduction but didn't do it on a monthly basis, did it on a quarterly basis, and the insured were to die during the first month, under that reading of the statute as applied to a UL policy, a two-month or two-thirds refund would be appropriate. But the fact that the industry, as an industry, has adopted deducting the monthly deduction on, as I said, a monthly basis, means that the industry, including Lincoln, is complying with the statute as written without needing to have an explicit exception. And could you have somebody on the initial beginning of this put in a certain amount into the account, say $100,000, and thereafter put in only the amount that would be sufficient to pay for the year's premium each year? But has that in the background? Now, wouldn't that be a situation where option one and option two would bring about different results without necessarily creating a windfall? Option one and option two would bring about different results, but the cost of paying for the option two policy means that regardless of what's in the policy account, you're always paying the full face amount for your cost of insurance charge. So that is going to be a higher amount than the option one policy. There still would be, under option one, under Nitkowitz's interpretation, there still would be a refund that is one that, according to the election that Nitkowitz took, would be inappropriately adding to the death benefit. I would also say, I believe Your Honor said earlier that there's no doubt that the amount of money was paid, was sufficient to keep the policy in force. There is a hallmark of these types of policies is the flexibility that the policyholder has. The policyholder could- Yeah, let me go back to the question that was asked at the very beginning. And that is, why wouldn't the insurance company really want a clear statement of New York law? Now, you said that this, which isn't in the record, so maybe we shouldn't look at it, about another policy where there was only $2,000 involved and so on and so on. But the very fact that some people might, because it is too small, be doing this, suggests that clarity would be worthwhile anyway. So why- Now, you won't be low, but we can come out with a decision that comes out your way. But that decision doesn't amount to anything as far as New York courts are concerned. They don't need to follow us. And the moment the Supreme Court of New York in one case comes out the other way, then a case which is federal doesn't need to follow what we've done before because there's a change in New York law. Your Honor, the statute which has been on the books for 100 years has no decisional law. And I believe that a statement by this court would be extremely well regarded and welcomed in this space. The one thing I do want to explain, the $2,000 is in the record. The amount of the planned premium is in Paragraph 7. You can do the algebra to get to $2,000. Thank you. I have just a question about the load charge. I mean, it seems to me harder to argue that that wasn't paid. The what charge? The load charge, which is taken, 15% of the planned premium is taken up front, right? The net premium factor of 85% is applied to any deduction into the interest-bearing account. So if you make a $100 payment to the interest-bearing account, $85 is credited to the policy value. Right. So 15% is the load charge, which is presumably to cover some administrative expenses, I guess. But it's not clear to me whether that's true or whether that's something that is clear from the pleading. So I think the statute, it's not clear from the pleading, Your Honor, but I think it's clear in the policy that that charge is applied to every contribution to the interest-bearing account. It is a per-premium charge and not a per-period or per-month charge. So below, the court found that the natural reading was that that load factor paid for administrative expenses and not for the cost of insurance. But even if it does provide for some part of the insurance coverage, some part of the cost of the company paying for coverage, there is no nexus between that 15% and any period of time that would be responsive to the statute. I'm not sure I understand that answer. It seems to me one could argue at least that the 15%, if it's the administrative cost associated with insurance for a particular period, is kind of accepted by the carrier, right? It's that this is not something you can borrow on. This is not something you can use as collateral. This is gone. The carrier's got the money, right? It is beyond the reach of the policyholder. You're right, Your Honor. But there's no connection to any period of time. Like Judge Calabrese said, you could start with a $100,000 payment that is in excess of any planned premium. That same contribution will be deducted, the 15%. Thereafter, if you pay a planned premium under Nitkowitz's theory, there's still no connection between the 15% and a period, a delineated start and stop period of coverage. It is a charge that is- On the flip side, just take me through how the premium here, take your last minute. How is the premium here not actually paid? So, actually paid is a reference to the insurance bargain between a payment and coverage. It is actually- The statute requires, in our view, three things. A transfer of funds, a period of coverage paid by funds, and that that period of coverage extends beyond the month in which the insured died. The planned premium, the contribution to the interest-bearing account, only satisfies the first of those elements. It is a transfer, but it is not actually paid. Let me try to see if I understand what you're saying in answer. Is what you're saying that it isn't actually paid because the person could ask for the money back that is in that account before a premium was due? Absolutely, Your Honor. Okay. It is accessible. It earns interest. Has it ever happened? Has it ever happened that someone takes a loan against the policy account? No, no, yeah. Well, that's a different thing, taking a loan against the policy. But has it ever happened that somebody has put this money in, and then before a premium is paid, takes the money out? Because maybe we shouldn't worry about whether something ever happens, but actually pay- It's instructive. Yeah. So if I understand the question, is there ever an instance where a policyholder contributes money to the interest-bearing account and then takes that money out via surrender or a partial surrender? And the answer is yes. For money beyond, so that there isn't enough there to pay the next, the premium for the rest of the year. So one of the ways that the policy functions is that you can decide, I don't want the insurance- I know what you're saying, it functions. But do you have an example of a particular case? And if so, have you put that in the record? That is not in the record. I am confident that I can find an instance where a policyholder has surrendered the policy. I'm confident that it can be found, Your Honor. Thank you. Okay. Thank you very much. We'll hear from your friend, Mr. Ard. You have two minutes, Mr. Ard. Thank you, Your Honor. Two things. First of all, let me start with the last point. Actually paid, it's very clear what actually paid means if you look at the statute. The prior part of the exact same subsection talks about a grace period situation where you have an unpaid premium. In a grace period, if you go into grace, if you don't have enough money in your cash account to cover for your monthly deductions, you have to pay three months of premiums to get out of grace. The first section says, well, if you don't pay all of that, you don't pay it, they can deduct the unpaid premium. That's an unpaid premium. You didn't actually pay the money. Actually paid is contrasting with that. It's a situation where you actually are paying the money. Here, he paid the money. It was cash, it was written, it was checked. It was cashed. The fact that you can withdraw it back out- So actually paid just means transfer of funds. Yes. Yes. And the easiest way to see that is to look at the exact same statute and to look at prior in the statute, it talks about an unpaid premium where you didn't actually pay it. That's the contrast. I guess I don't see that. The planned premium, if nobody deducts off of it or borrows on it, will be used to pay the insurance premium over time, right? That's what happens. They take out the 15% off the top and then a per coverage period insurance payment is paid, right? Why do you need a grace period otherwise? The point is that if you've paid it all up front, then there shouldn't be any fear that you're going to lose coverage. But the grace period, if you don't cover the shortfall in the grace period, you lose the policy, right? Yes, Your Honor, but that's not how it works for the guaranteed rider. For the guaranteed rider, it says explicitly in the policy that on JA87, that if you pay the planned premium every year and your planned premium is set up so it covers the guaranteed rider, it stays in place irrespective of the monthly deductions. The monthly deductions have no impact on whether the guaranteed rider stays in place. And the guaranteed rider, it keeps you from going into grace. It's a secondary guarantee. It's a second way of keeping the policy in force. Let me ask you this. Suppose on day one of the year, your client paid $57,000 in. And then a month before he died, he chose to take out the seven months just by chance after he then happened to die. He could have done that, couldn't he have? Yes, and if he- Please give me back the last seven months. I'll put it back in later. But at the moment, I need that to buy myself a Jaguar or something, a fancy car. And then instead, he happens to die. And so he is actually paid premiums only up to the time he died. Couldn't that have happened under this policy? Well, I wasn't sure if I quite understood the question in the sense of if he did- He could have done it before he died, of course. And if he did it before he died, it would be a very different case. And we wouldn't necessarily be saying that he paid the annual fee. I understand that it would be a different case. He'd have no claim for any money because he'd already have gotten it. But what I'm asking in terms of understanding these policies, could he have done that? Well, one thing- I asked the other-your opposing counsel, has that ever happened? And he didn't give me much of an answer. But I want to know is could it have happened in this very case? Are you asking whether after-if he had had a plan after he died to take money out? Well, if before he died, if he said, Jeepers, I just saw a beautiful Ferrari, you know, some fancy car, and I want to get it. And I don't have the money handy. But I don't need my insurance policy now for the next seven months. I've got a month or two ahead. So I'll take it for seven months and does it. And then he happens to die. He's perfectly fine. He was covered up until the time. And he got that without-regardless of what option he had put in for it. Well, first, to go back to Judge Sullivan's question, he would not have gotten back the load charge. And that's critical. No, no, no. He would not have gotten back the load charge. And he can never take out the load charge. Yeah. The load charge is put in on whatever you put in there, wherever you put it. That's right. But in terms of premium actually paid- So, yeah, so-and I apologize, Your Honor, it's my fault. But I'm not sure I still quite understood the example. Because if he did it before he died because he didn't want to take it five, four hours- How does he do it before he died? But then that's what I was trying to say. It's a different case. I'm a man of faith, but I don't believe you can change your life insurance after you die. Yes, yes, yes, yes. If he does it before he died, then yes. But that's an objective question that can be answered for every class member and, more importantly, for this person. And he did not take it before he died. The bare theoretical possibility that you can take money out- But compare that with the ordinary type of policy where he paid the $57,000 at the beginning of the year. In the ordinary policy, he could not go three, four months in and say, I want back my last seven months that I paid because I want to use it to buy a car.  But in a different policy, he couldn't do that. In this policy, he could. I don't think that's true, Your Honor. I guess that gets back to my cable example. In a term policy, absolutely it could be set up so that you pay for a year, but you could cancel your policy or withdraw the money from the policy eight months in, and you'd have four months that you get back. So the bare possibility that you- But you'd be canceling the policy. And canceling the policy has any number of consequences because if you cancel the policy and then you have a heart attack in that month and haven't died, you might not be able to reestablish the policy. But in the situation that I was positing, you could do that, have a heart attack and still be fully insured. Maybe it's important to emphasize one thing, which is that when you do a partial surrender, you lose part of your death benefit. So it's not like you don't have consequences. You have consequences. You lose coverage. You don't just get to take the money out. If you put $100,000 in, you lose a load charge up front. You have $85,000 left. When you say you lose coverage, you don't lose all coverage. No, you lose a proportional amount to what you take out. So it's not like you can just take out the money and you're left with your same amount of death benefit. If you take out $30,000 from your account, you lose that in death benefit. You actually lose more the way the calculation works. So it's not without consequences. And the statute does not refer to this situation. We're making statutory exceptions that aren't in the statute. The statute is laying it in very clear. Thank you very much, Mr. Arnn. Can I say one more thing very briefly, which is that the statute, if you look at page SPA-26, the statute has been amended one, two, three, four, five, six, seven, eight, nine times since 1984, when universal life policies came out. Nine times it's been amended. So the idea that the statute somehow, the fact that the prior subsection explicitly refers to universal life policies, where there's a deduction, doesn't matter. Thank you.  Thank you.